IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA**

v.                                                      Criminal No. 3:22cr86

**MESURON TAYLOR,**

Petitioner.

## MEMORANDUM OPINION

Mesuron Taylor, a federal inmate proceeding *pro se*, brings this motion pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion," ECF No. 59). The Government responded, asserting that the claims raised in the § 2255 Motion are both procedurally defaulted and without merit. (ECF No. 62.) Taylor has filed a reply (ECF No. 65), supporting affidavits (ECF Nos. 66, 67, 69), and a Motion for Leave to Supplement the § 2255 Motion (ECF No. 70). For the reasons set forth below, although the Motion for Leave to Supplement (ECF No. 70) will be GRANTED, the § 2255 Motion (ECF No. 59) will be DENIED.

### I. Procedural History

On June 21, 2022, a grand jury returned a three-count Indictment charging Taylor with: (1) distribution of a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) ("Count One"); (2) distribution of forty grams or more of a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) ("Count Two"); and, (3) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) ("Count Three"). (ECF No. 13, at 1–3.)[1]

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

On January 11, 2023, Taylor entered a guilty plea consistent with a Plea Agreement he had reached with the Government. (ECF Nos. 31, 32.) Pursuant to the Plea Agreement, Taylor pled guilty to only Count Two of the Indictment. (ECF No. 32 ¶ 1.) Taylor agreed that he was "plead[ing] guilty because [he] [was] in fact guilty of the charged offenses." (ECF No. 32 ¶ 3.) He further "admit[ted] the facts set forth in the Statement of Facts filed with th[e] Plea Agreement and agree[d] that those facts establish[ed] guilt of the offenses charged beyond a reasonable doubt." (ECF No. 32 ¶ 3.) Taylor next agreed that his attorney had rendered effective assistance (ECF No. 32 ¶ 4), and that he understood that he was "surrender[ing] certain rights as provided in this agreement," including

> the right to appeal the conviction and any sentence within the statutory maximum described above (or the manner in which that sentence was determined) on the grounds set forth in 18 U.S.C. § 3742 or on any ground whatsoever other than an ineffective assistance of counsel claim that is cognizable on direct appeal, in exchange for the concessions made by the United States in this Plea Agreement. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b).

(ECF No. 32 ¶ 6.) The parties agreed to recommend to the Court that Taylor "distributed or it was reasonably foreseeable . . . that he distributed at least 1,000 kilograms but less than 3,000 kilograms of converted drug weight." (ECF No. 32 ¶ 5(a).) Finally, the Government agreed that, in exchange for Taylor's guilty plea, it would not "further criminally prosecute [Taylor] . . . for the specific conduct described in the Indictment or Statement of Facts" and that it would move to dismiss Counts One and Three of the Indictment. (ECF No. 32 ¶¶ 7, 8.)

In the Statement of Facts, Taylor stipulated that "the factual allegations contained [in the document] and in Count Two of the Indictment [were] true and correct, and that the United States could have proven them beyond a reasonable doubt." (ECF No. 33, at 1.) The Statement of Facts set forth the following:

2

1. On or about May 31, 2022, in the Eastern District of Virginia, the defendant, Mesuron Taylor ("Taylor"), did knowingly and intentionally distribute forty grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B).

2. On or about May 5, 2022, law enforcement utilized a reliable confidential source ("CS-1") to make a controlled purchase of a quantity of fentanyl from Taylor. Prior to the controlled purchase, CS-1 met law enforcement at a staging area where he/she was provided with a quantity of governmental funds for the purchase. CS-1 was also wired with an audio/video recording device and his vehicle/person were searched for contraband with negative results. CS-1 traveled to Taylor's residence located within the Lock's Apartments, at 300 South 11[th] Street, Richmond Virginia, Apartment #3233. Upon arrival, CS-1 entered into Taylor's apartment and Taylor distributed to CS-1 a quantity of suspected fentanyl in exchange for United States currency. While inside Taylor's apartment, CS-1 observed two firearms located in the center console of a couch. Immediately following the controlled purchase, CS-1 met law enforcement at a neutral location and turned over the suspected fentanyl to law enforcement. The suspected fentanyl was submitted to the DEA Mid-Atlantic Laboratory for analysis and determined to be 2.94 grams of fentanyl.

3. On or about May 31, 2022, law enforcement utilized CS-1 to make a controlled purchase of a quantity of fentanyl from Taylor. Prior to the controlled purchase, CS-1 met law enforcement at a staging area where he/she was provided with a quantity of governmental funds for the purchase. CS-1 was also wired with an audio/video recording device and his vehicle/person were searched for contraband with negative results. CS-1 traveled to Taylor's residence located within the Lock's Apartments, at 300 South 11[th] Street, Richmond Virginia, Apartment #3233. Upon arrival, CS-1 entered into Taylor's apartment and Taylor distributed to CS-1 a quantity of suspected fentanyl in exchange for United States currency. While inside Taylor's apartment, CS-1 observed two firearms in Taylor's possession and discussed the firearms with Taylor. Immediately following the controlled purchase, CS-1 met law enforcement at a neutral location and turned over the suspected fentanyl to law enforcement. The suspected fentanyl was submitted to the DEA Mid-Atlantic Laboratory for analysis and determined to be 56.87 grams of fentanyl.

4. On June 1, 2022, a Drug Enforcement Administration Special Agent applied for and obtained a federal search warrant for Taylor's residence located at 300 South 11[th] Street, Richmond Virginia, Apartment #3233. Upon execution of the search warrant, law enforcement encountered Taylor and a female inside the apartment. A search of the residence revealed .74 grams of cocaine hydrochloride; cutting agents; United States currency; a Clock, Model 36, .45 caliber, semi-automatic pistol, serial number PNX390, with ammunition; and a Ceska Zbrokovka, Model CZ97 B, .45 caliber, semi-automatic pistol, serial number A502091, with ammunition and some cash.

3

(ECF No. 33, at 1–3.) The Statement of Facts also described other relevant, but uncharged, conduct from August 2020:

> 5. Pursuant to relevant conduct in this case, in and around August 2020, a reliable cooperating source, CS-2, contacted Taylor about purchasing approximately a kilogram of methamphetamine. After Taylor agreed to "front" CS-2 with methamphetamine, on or about August 31, 2020, Taylor contacted Co-Conspirator #1 to transport the methamphetamine from Richmond, Virginia, to the Charlottesville, Virginia area. Co-Conspirator #1 agreed to transport the methamphetamine and Taylor instructed Co-Conspirator #1 to contact Co-Conspirator #2 and arrange for the pick-up of the methamphetamine. On approximately September 2, 2020, Co-Conspirator #1 traveled to the designated location in the Eastern District of Virginia and picked up methamphetamine from Co-Conspirator #2. On September 3, 2020, Co-Conspirator #1 transported over 800 grams of methamphetamine to CS-2 in Stuarts Draft, Virginia. Upon arrival to the meeting location in Stuarts Draft, law enforcement officers interdicted Co-Conspirator #1. A search of the trunk of Co-Conspirator #1's vehicle revealed a handbag containing two large ziplock bags containing a white crystalized substance. The white crystalized substance was seized and sent to the DEA Mid-Atlantic Laboratory for analysis. The DEA Mid-Atlantic Laboratory determined the white crystalized substance was 843 grams of methamphetamine hydrochloride. At the time of the transportation, Taylor knew Co-Conspirator #1 was transporting methamphetamine on his behalf to CS-2. Following the seizure of the methamphetamine, Taylor contacted CS-2 asking details about the law enforcement interdiction, demanded payment for the seized methamphetamine, and discussed potential further drug deals.
>
> 6. For purposes of relevant conduct, the parties stipulate that Taylor distributed and conspired with others to distribute 843 grams of methamphetamine, 59.81 grams of fentanyl, and converted drug proceeds as the result of cash found within the residence. The parties further stipulate that the foreseeable methamphetamine weight was based on the net weight versus the pure weight. At all relevant times, Taylor knew he was distributing or conspiring with others to distribute controlled substances. As a result, pursuant to Section 2D 1.1(c)(1) of the Sentencing Guidelines, relating to Drug Quantity, the parties agree that Taylor distributed or it was reasonably foreseeable to the defendant that he distributed at least 1,000 kilograms but less than 3,000 kilograms of converted drug weight (Level 30). In addition, pursuant to Section 2D 1.1(b)(1) of the Sentencing Guidelines, the defendant possessed a dangerous weapon, i.e. firearm, resulting in a two-level enhancement. Further, the parties stipulate and will recommend to the Court that no other specific offense characteristics apply (including any cross-reference pursuant to § 2K2.1(c)(1)) and no other Chapter 3 adjustments apply.

(ECF No. 33, at 3–4.)

During the Rule 11 hearing, Taylor agreed that he understood the charge to which he was pleading guilty and that the Government would be required to prove each element of each charge beyond a reasonable doubt if he did not plead guilty. (ECF No. 61, at 7–10.) Taylor agreed that he had had a sufficient opportunity to review the case—including possible defenses and whether to plead guilty—with his attorney (ECF No. 61, at 8–9), that his decision to plead guilty was his alone (ECF No. 61, at 9), and that he was pleading guilty because he was, in fact, guilty of the offense (ECF No. 61, at 11).

The Court then highlighted several aspects of the Plea Agreement, including that Taylor was waiving his "right to appeal the conviction and any sentence within the statutory maximum that is constitutional" (ECF No. 61, at 12) and that the parties had agreed to recommend a sentence within the guideline range of 140 to 175 months of imprisonment (ECF No. 61, at 14). The Court further highlighted that Taylor would be subject to a sentencing enhancement "for possessing a dangerous weapon." (ECF No. 61, at 14.)

The Court then turned to the Statement of Facts and asked Taylor whether he believed any facts were "wrong, [ ] should be changed or added in, or taken out?" (ECF No. 61, at 22.) Taylor responded in the negative and confirmed that he had signed the statement of facts "because the information in the document [was] true." (ECF No. 61, at 22.)

Before sentencing, the United States Office of Probation and Pretrial Services prepared a Presentence Investigation Report ("PSR"). (ECF No. 40.) Taylor's Base Offense Level under the United States Sentencing Guidelines ("U.S.S.G.") was 34 based on a converted drug weight of at least 10,000 kilograms but less than 30,000 kilograms.[2] (ECF No. 40 ¶ 16.) Taylor

---

[2] "'[C]onverted drug weight' is not a suggestion of the quantity of the actual illegal substance possessed, but rather seeks to establish a common variable to determine the appropriate penalty when there are various drugs or where there are single counts of drugs not

received a two-level enhancement for possession of a dangerous weapon (ECF No. 40 ¶ 17) and a total of three levels of reductions for acceptance of responsibility (ECF No. 40 ¶¶ 23, 24), resulting in a Total Offense Level of 33 (ECF No. 40 ¶ 25).

The PSR listed the "date of earliest relevant conduct" as August 2020 (ECF No. 40, at 7) and calculated Taylor's Criminal History Score to be 10 based on past convictions for the following: possession of a firearm by a felon (ECF No. 40 ¶¶ 50 (three points), 51 (three points)); driving under the influence (ECF No. 40 ¶ 52 (one point)); failure to appear (ECF No. 40 ¶ 53 (one point)); sale, transportation, offer to sell controlled substances (ECF No. 40 ¶ 54 (one point)); and assault (ECF No. 40 ¶ 56 (one point)). Taylor's criminal history score placed him in a criminal history category of V. (ECF No. 40 ¶ 58.) On this basis, Taylor's sentencing guidelines range was 210–262 months of imprisonment, with a statutory restrictive range of a minimum of five years of imprisonment to a maximum of forty years of imprisonment. (ECF No. 40, at 31.)

On May 1, 2023, Taylor filed a Motion for Downward Variance (ECF No. 42) that the Government did not oppose consistent with the terms of the Plea Agreement, pursuant to which the parties agreed to rely on "the regular meth[amphetamine] guidelines" rather than "the actual meth[amphetamine] guidelines." (ECF No. 48, at 8; *see* ECF No. 32 ¶ 5(a).) On May 11, 2023, the Court granted Taylor's Motion for Downward Variance and imposed a sentence of 156 months of incarceration. (ECF No. 45; ECF No. 48, at 13, 18, 20.) Consistent with the Plea Agreement, Taylor did not file an appeal of his conviction or sentence.

---

contained on the schedule." *United States v. Lavalais*, No. 1:22-CR-145-01, 2025 WL 209034, at *4 (W.D. La. Jan. 14, 2025) (citing U.S.S.G. § 2D1.1(c), Note (K) to Drug Quantity Table).

Taylor executed his § 2255 Motion on May 20, 2024 (ECF No. 59, at 8), and the Court received the § 2255 Motion on May 28, 2024 (ECF No. 59, at 1).[3] Taylor raises five claims for relief, all under the umbrella of ineffective assistance of counsel:

| | |
|---|---|
| Claim One | "[Counsel failed to] [c]ross examine evidence. I asked my attorney to have the fentanyl and meth in my discovery to be retested for purity by a private lab and he failed to do so. He solely went by what the government accused. The meth was a 2-year-old drug conduct which was used as relevant conduct but was never tested in my current case which I was sentenced for. The fentanyl was a mixture and not tested for purity." (ECF No. 59, at 5.) |
| Claim Two (a) | "Misrepresentation and misadvise, and failure to object. My attorney promised me that if I pled guilty to the drug count 2 all other counts will be dropped and not effect my sentencing." (ECF No. 59, at 6.) |
| Claim Two (b) | "I was given a 2-point enhancement [my counsel] did not object to." (ECF No. 59, at 6.) |
| Claim Three | "When receiving my PSR my attorney failed to object to my criminal history for a firearm that was well past the 15-year limitation. Also failed to object to 3 points on my criminal history for unauthorized use of [a] vehicle which I received only 6 months sentence therefore should [have] only gotten 2 points for but would've been well past the ten-year limitation." (ECF No. 59, at 6.) |
| Claim Four | "My counsel coerced and misadvised me that if I appeal any part of my sentence I will get more time." (ECF No. 59, at 6.) |

On July 9, 2024, the Government responded to the § 2255 Motion, arguing that Taylor's claims are procedurally defaulted and, in any event, without merit. (ECF No. 62, at 1, 4–20.) In his Reply, Taylor disputed each of the Government's arguments. (*See* ECF No. 65.) Since that

---

[3] Taylor does not state the specific date on which he turned over the § 2255 Motion to prison officials for mailing, and whether it is timely is therefore not entirely clear. *See Houston v. Lack*, 487 U.S. 266, 276 (1988). The Government notes this in its Opposition, however, and has expressly declined to challenge the § 2255 Motion on timeliness grounds, citing its "meritless nature." (ECF No. 62, at 1, n.1.)

7

time, Taylor has filed three affidavits in support of his 2255 Motion (ECF Nos. 66, 67, 69)[4] and a Motion for Leave to Supplement (ECF No. 70).

The Motion for Leave to Supplement is rambling, difficult to decipher, and does not set forth any clear statement of the new grounds on which Taylor seeks relief. Reading the document broadly, the Court gleans that Taylor again faults his attorney for the inclusion of the 2020 methamphetamine distribution as relevant conduct in the Statement of Facts. The Court discerns the following two claims:

| | |
|---|---|
| Claim Five | "Taylor asked counsel to fight the meth from 2020's inclusion [in the Statement of Facts], [but] counsel refused," thereby denying Taylor his preferred defense strategy. (ECF No. 70-1, at 7.) |
| Claim Six | "[The] Court, absent counsel inducing Taylor to sign the plea, would not lawfully be able to attribute to him this increase in substance weight because [Taylor] can only be culpable of events from the date in the affidavit [filed in support of the criminal information]." (ECF No. 70-1, at 7–8.) |

## II. Analysis

### A. Procedural Default

The Government first argues that Taylor "advances claims one through four based on alleged ineffective assistance of counsel," (ECF No. 62, at 6), but that "each claim is based on a legal theory that was available to [Taylor] prior to and during his plea proceeding, at his sentencing hearing, as well as on direct appeal" and that the claims are therefore procedurally defaulted (ECF No. 62, at 6). The Government is incorrect. The law is "well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'"

---

[4] The Court has reviewed these affidavits in considering Taylor's claims.

8

*United States v. King*, 119 F.3d 290, 295 (4th Cir. 1997) (quoting *United States v. Williams*, 977 F.2d 866, 871 (4th Cir. 1992)). Accordingly, Taylor's claims are properly before the Court.

### B. Merits of Taylor's Ineffective Assistance of Counsel Claims

The Government next asserts that Taylor's claims are without merit. For the reasons explained below, the Court agrees.

To demonstrate ineffective assistance of counsel, a convicted defendant must first show that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court has modified this second prong of *Strickland* to require the convicted defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Of course, in conducting the foregoing inquiry, the representations of the convicted defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a

9

formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). In light of the strong presumption of verity that attaches to a petitioner's declarations during his plea proceedings, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (citations omitted). Thus, the Fourth Circuit has admonished that "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 221–22. No circumstances exist here that would lead the Court to consider Taylor's prior sworn statements as other than truthful.

### 1. **Claim One**

In Claim One, Taylor asserts that he asked his attorney to have samples of the fentanyl and methamphetamine mixtures at issue retested for purity and that his attorney failed to carry out this request, thereby rendering ineffective assistance. (ECF No. 59, at 5.) This claim is without merit.

As an initial matter, Taylor's attorney attests that Taylor never requested to have any substance retested.[5] (ECF No. 62-1, at 3.) Even assuming Taylor *did* ask his attorney to retest the drugs in question, his failure to identify what effect such retesting would have had is fatal to his claim. Taylor does not, for instance, allege that the mixtures did not actually contain

---

[5] Taylor does not rebut or contest this assertion in the three affidavits he submitted after receiving the Government's Opposition to the § 2255 Motion.

10

controlled substances and that retesting those substances could have proven his innocence.[6] Rather, the sum of Taylor's argument appears to be that his attorney's failure to retest the drugs *itself* amounted to unconstitutional ineffective assistance. This vague allegation does not establish "that there is a reasonable probability that, but for counsel's errors, [Taylor] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. *See also Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990) (observing that petitioner's failure to allege "what an adequate investigation would have revealed" was fatal to his ineffective assistance of counsel claim). Accordingly, the Court concludes that Taylor has not shown deficient performance or any resulting prejudice, and Claim One will be DISMISSED.

### 2. Claim Two (a)

In Claim Two (a), Taylor argues that his attorney misled him into believing that Counts One and Three of the Indictment would be dropped if he agreed to plead guilty to Count Two. (*See* ECF No. 59, at 5.) As the Government correctly notes, Counts One and Three of the Indictment *were* dismissed. (*See* ECF No. 45, at 1.) Accordingly, the proposed factual basis of Claim Two (a) is incorrect, and Taylor has accordingly failed to show either deficient performance or prejudice. *See, e.g., Furlow v. United States*, 4:13cv120, 4:11cr89, 2015 WL 1349962, at *4 (E.D. Va. Mar. 23, 2015) (denying a § 2255 claim that "relie[d] on factually incorrect information" and therefore "fail[ed] to demonstrate either deficient performance or resulting prejudice").

It is also conceivable that in Claim Two (a), Taylor intends to argue that his counsel told him that the facts underlying Counts One and Three of the Indictment would not be considered

---

[6] Nor could Taylor argue this, given his agreement to the Statement of Facts, in which he stipulated that the substances in question were, in fact, controlled substances. (*See* ECF No. 33 ¶¶ 1–6.)

11

as relevant conduct at sentencing. To the extent this was Taylor's intended meaning, however, this claim is still without merit. Indeed, the facts underlying Counts One and Three—including the specific weight of the fentanyl and the type of firearms present in Taylor's apartment—were included in the Statement of Facts, and at the Rule 11 hearing, Taylor swore he reviewed those facts and that they were true and correct. (*See* ECF No. 33 ¶¶ 2, 4; ECF No. 61, at 22). He also agreed that he had "review[ed] this case with [his] attorney" and "discuss[ed] everything about [the] case, including any possible defense, as well as . . . whether or not to plead guilty." (ECF No. 61, at 8–9.) Taylor's own statements therefore preclude him from arguing that his attorney misled him into accepting the Plea Agreement or that Taylor was unaware that Counts One and Three could be considered relevant conduct at sentencing. *See Lemaster*, 403 F.3d at 221–22 (observing that, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.") For these reasons, Claim Two (a) will be DISMISSED.

### 3. Claim Two (b)

In Claim Two (b), Taylor asserts that his attorney was ineffective for failing to object to the inclusion of a two-point firearm enhancement applied at his sentencing. (*See* ECF No. 59, at 6.) This claim lacks merit because, as the Court found at the Rule 11 hearing, Taylor knowingly and voluntarily entered into the Plea Agreement, a term of which was application of the two-point enhancement at issue. (*See* ECF No. 32 ¶ 5(b); ECF No. 61, at 14, 22–23.) In fact, the Court explicitly identified the enhancement's inclusion in the Plea Agreement at the Rule 11 hearing. (ECF No. 61, at 14 ("[The parties agree] under [U.S.S.G. §] 2D1.1 that there should be points added for possessing a dangerous weapon.").) The enhancement was also described in the

Statement of Facts, which Taylor swore he reviewed and with which he swore he had no disagreement. (*See* ECF No. 33 ¶ 6; ECF No. 61, at 21–22.) As a result, Taylor has not shown deficient performance or prejudice as to this claim. *See Leak v. United States*, No. 3-18-cv-00629-MOC, No. 3:16-cr-00232-MOC-DSC-2, 2020 WL 2576192, at *3 (W.D.N.C. May 21, 2020) (denying argument that counsel was ineffective for failing to "object to [a] two-level bodily injury enhancement" where petitioner had "voluntarily agreed to th[e] enhancement as a term of his plea agreement" (citing *Royal v. Taylor*, 188 F.3d 239, 249 (4th Cir. 1999))). Claim Two (b) will therefore be DISMISSED.

### 4. Claim Three

In Claim Three, Taylor alleges that his attorney failed to object to the inclusion in his criminal history of three prior convictions that he believes were too old to be properly considered. (ECF No. 59, at 6.) Specifically, Taylor identifies two 2005 convictions for possession of a firearm by a felon—(1) a federal conviction entered in February 2005 and (2) a state conviction entered in March 2005—and a 2002 conviction for unauthorized use of a vehicle. (ECF No. 59, at 6; *see also* ECF No. 40, at 8–21.)

As an initial matter, the PSR reflects that Taylor was not assessed any criminal history points based on his unauthorized use of a vehicle conviction. (*See* ECF No. 40 ¶ 41.) Accordingly, the proposed factual basis for this aspect of Claim Three is untrue, and Taylor is not entitled to relief.

Next, although the 2005 firearm convictions *did* increase Taylor's criminal history score, Taylor's attorney was not deficient for failing to object to their inclusion. Section 4A1.2(e)(1) of the U.S.S.G. provides that:

> Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant

13

offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

U.S.S.G. § 4A1.2(e)(1). Application Note 8 of the same section then clarifies that "the term 'commencement of the instant offense' includes any relevant conduct." U.S.S.G. § 4A1.2 Application Note 8 (emphasis omitted).

Here, Taylor agreed to the inclusion of relevant but uncharged conduct from August 2020 in the Statement of Facts. (ECF No. 33 ¶ 5.)[7] Accordingly, pursuant to the U.S.S.G., the Court was properly able to consider sentences that "resulted in the defendant being incarcerated during any part" of the fifteen-year period preceding that time. *See* U.S.S.G. § 4A1.2(e)(1). Both Taylor's two-year term of imprisonment for the state firearm conviction, which ended on June 15, 2006, and his revocation of supervised release in the federal firearm case (in which he received a 34-month term of imprisonment), which ended on March 22, 2012 (*see* ECF No. 40 ¶¶ 50–51), fell squarely within the fifteen-year window authorized by the sentencing guidelines. Any objection to the inclusion of the 2005 firearm convictions in the PSR therefore would have been futile, and an attorney's failure to raise a futile objection or argument does not amount to deficient performance. *See Premo v. Moore*, 562 U.S. 115, 124 (2011). Claim Three will therefore be DISMISSED.

---

[7] In his Reply, Taylor argues for the first time that the uncharged 2020 conduct was not truly "relevant conduct" as defined under the U.S.S.G. and that his attorney's advice to agree to its inclusion in the Statement of Facts thus amounted to ineffective assistance. (*See* ECF No. 65, at 2–11.) Taylor's effort to raise belatedly a novel argument in a reply brief is inappropriate, and the Court will therefore not consider the argument. *See De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 531 (4th Cir. 2022) ("[G]enerally, 'new arguments cannot be raised in a reply brief' before the district court." (quoting *United States v. Smalls*, 720 F.3d 193, 197 (4th Cir. 2013))); *Snyder v. United States*, 263 F. App'x 778, 779 (11th Cir. 2008) (affirming district court's decision not to specifically address a new claim advanced for the first time in a § 2255 reply brief).

### 5. Claim Four

Claim Four is vague and difficult to understand. It reads, in sum, as follows: "My counsel coerced [and] misadvised me that if I appeal any part of my sentence I will get more time." (ECF No. 59, at 6.) Neither the § 2255 Motion nor Taylor's affidavits offer any additional explanatory information regarding when Taylor's attorney allegedly carried out this coercion—that is, it is not clear whether the alleged coercion occurred before Taylor entered his plea or after he was sentenced. In deference to Taylor's *pro se* status, the Court will consider Claim Four from each perspective.

To the extent in Claim Four Taylor contends that his attorney coerced him into accepting the Plea Agreement, any such claim is barred by Taylor's own testimony at the Rule 11 hearing, where he swore that (1) he entered his plea voluntarily and not as the result of any threats or promises (*see* ECF No. 61, at 15) and (2) he was entirely satisfied with counsel's representation (*see* ECF No. 61, at 9). *See Lemaster*, 403 F.3d at 221–22.

To the extent Taylor suggests that his attorney dissuaded him from filing any appeal after he was sentenced, the claim is equally without merit. First, this claim is illogical and Taylor fails to demonstrate prejudice because it is not clear how filing an appeal would have resulted in Taylor receiving a harsher punishment. More crucially, though, Taylor waived his right to appeal as a condition of his validly entered plea, something the Court thoroughly explained at the Rule 11 hearing. (*See* ECF No. 61, at 12, 16.) Accordingly, Taylor cannot demonstrate any prejudice flowing from any alleged misinformation from his attorney. *United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995). Finally, even to the extent Taylor had not waived his right to appeal, he does not identify what argument he would have raised on appeal, and his claim is therefore too vague and speculative to warrant relief. *See United States v. Dyess*, 730 F.3d 354,

15

359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the [d]istrict [c]ourt." (quoting *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000)). For all of these reasons, Claim Four will be DISMISSED.

### III. Motion for Leave to Supplement

#### A. Statute of Limitations and Relation Back of Claims

Taylor filed the Motion for Leave to Supplement outside the one-year limitation period under Section 101 of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), *see* 28 U.S.C. § 2255(f), and does not claim or demonstrate any entitlement to a belated commencement of the limitation period under 28 U.S.C. § 2255(f)(2)–(4) or equitable tolling, *see United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (quoting *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003)). As a result, the Court can consider Taylor's new claims only if they relate back to the claims in his original § 2255 Motion.

Courts apply Rule 15 of the Federal Rules of Civil Procedure to motions to amend § 2255 motions. *United States v. Pittman*, 209 F.3d 317, 317 (4th Cir. 2000). Rule 15 allows for amendments to a § 2255 motion filed after the one-year statute of limitations, provided the amendment relates back to the original timely filed motion. *Id.* A claim relates back if it "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). An amended claim "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). It is not sufficient that the new claim simply "has the same form as the original claims," if the new claim "arises out of wholly different conduct." *Pittman*, 209 F.3d at

16

318. Thus, "a petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Davenport v. United States*, 217 F.3d 1341, 1346 (11th Cir. 2000); *see also United States v. Duffus*, 174 F.3d 333, 337 (3d Cir. 1999)).

Here, the Court is satisfied that the claims raised in the Motion for Leave to Supplement relate back to the original § 2255 Motion. There, Taylor raised a claim regarding counsel's failure to pursue his preferred defense strategy as well as counsel's alleged coercion with respect to his acceptance of the Plea Agreement. (*See* ECF No. 59, at 5–6.) Claims Five and Six as set forth in the Motion for Leave to Supplement also relate to counsel's performance with respect to Taylor's agreement to, and the application of the terms of, the Plea Agreement. (*See* ECF No. 70-1, at 7–8.) For this reason, the Court will address the merits of Taylor's supplemental claims. *See United States v. Tucker*, No. 3:09CR298-HEH, 2015 WL 1649123, at *10 (E.D. Va. Apr. 13, 2025) (finding that new claim "potentially relate[d] back" to old claim because each addressed whether "counsel unduly influenced or 'forced,' [a petitioner] to accept [a] Plea Agreement").

### B. <u>Claim Five</u>

In Claim Five, Taylor asserts that his attorney failed to contest the inclusion of the 2020 methamphetamine distribution as relevant conduct in the Statement of Facts, thereby depriving him of his preferred defense strategy. (ECF No. 70-1, at 7.) Although the Motion for Leave to Supplement is rambling and difficult to understand, it appears that Taylor bases this claim on his belief that, had he not pled guilty, the Government would have been required to prove the 2020

17

relevant conduct by a preponderance of the evidence at sentencing, which he does not believe it could have succeeded in doing. (ECF No. 70-1, at 3–6.)

This claim is without merit because it is no more than an argument that counsel should have objected to the inclusion in the Statement of Facts information that Taylor later voluntarily admitted. Indeed, in the Statement of Facts, Taylor signed his name under a paragraph that read as follows: "I have consulted with my attorney regarding this Statement of Facts. I knowingly and voluntarily agree that each of the above-recited facts is true and correct and that had this matter gone to trial the United States could have proven each one beyond a reasonable doubt." (ECF No. 33, at 5.) Because Taylor was aware of the basis of this claim and nevertheless decided to plead guilty, he cannot show any prejudice as a result of his attorney's allegedly deficient performance. Claim Five will be DISMISSED.

### C. Claim Six

Claim Six reads as follows: "[The] Court, absent counsel inducing Taylor to sign the plea, would not lawfully be able to attribute to him this increase in substance weight because [Taylor] can only be culpable of events from the date in the affidavit [filed in support of the criminal information]." (ECF No. 70-1, at 7–8.)

This claim is also meritless because the U.S.S.G. clearly contemplate consideration at sentencing of relevant conduct predating charged offenses. *See* U.S.S.G. § 1B1.3; *United States v. Whitted*, 785 F. App'x 948, 952 (4th Cir. 2019) (affirming consideration of relevant conduct that "extend[ed] back several years before the charged conspiracy" because it was part of a "long and unbroken chain of drug transactions . . . [that] bore significant similarities and served a common purpose"). Accordingly, Claim Six relies on an incorrect interpretation of the law, and Taylor cannot show deficient performance or prejudice. Claim Six will be DISMISSED.

### III. Conclusion

For the foregoing reasons, although the Motion for Leave to Supplement (ECF No. 70) will be GRANTED, the § 2255 Motion (ECF No. 59), as supplemented, will be DENIED.[8] An appropriate Order will accompany this Memorandum Opinion.

/s/ M. Hannah Lauck
United States District Judge

Date: 11/7/2025
Richmond, Virginia

M. Hannah Lauck
United States District Judge

---

[8] An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Taylor has not satisfied this standard.